IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Javier Villanueva-Guerrero, ) | |
| ) | Civil Action No. 8:07-1752-HMH-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| John L. LaManna, Warden of ) | |
| FCI-Edgefield; L. Fuertes-Rasario, ) | |
| Health Service Administrator; Ms. ) | |
| S. Baron, R.N.; NFN Saha, ) | |
| Practitioner, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a federal prisoner proceeding *pro se*, alleges his constitutional rights have been violated pursuant to 42 U.S.C.§ 1983/*Bivens*. (Compl. at 1.)[1] This matter is before the Court on the defendants' motion to dismiss, or, alternatively, for summary judgment. (Dkt. Entry # 20.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

---

[1] Because the defendants are all federal employees, the undersigned construes the complaint as alleging claims pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

The plaintiff brought this action on June 21, 2007, seeking damages for alleged civil rights violations.[2] On November 13, 2007, the defendants filed a motion to dismiss, or, alternatively, for summary judgment. By order filed November 14, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On December 19, 2007, the plaintiff filed a response.

## FACTS PRESENTED

The plaintiff is a federal inmate who was transferred to the Federal Correctional Institution in Edgefield ("FCI-Edgefield") on March 28, 2007. In 1984, he was stabbed in the abdomen and underwent a colostomy. The plaintiff claims that since being housed at FCI-Edgefield that despite numerous requests, he has not received proper medication and treatment for an open wound relating to his colostomy and that he requires urgent medical attention, including surgery to repair an abdominal hernia or perforated ulcer. (Compl. at 10.)

In his complaint, the plaintiff states that on April 20, 2007, due to bleeding from his colostomy site, he requested immediate medical attention from the defendant Saha who

---

[2]The FCI- Edgefield mailroom stamp reflects that the complaint was forwarded to this Court on June 21, 2007. (Pet. Ex. 36.) However, there is no indication when the mailroom actually received the complaint from the plaintiff. *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court). The undersigned notes the complaint and proof of service were signed by the plaintiff on June 1, 2007. (Compl. at 11 and Ex. 2 at 6.) Reviewing the complaint and the numerous attachments, however, the undersigned notes that there are several references to later dates in June 2007. (*See, e.g.* Compl. Ex. 4 at 6-7.) Therefore, the undersigned has used the date the complaint was forwarded to this Court as the filing date, June 21, 2007.

made hand movements and said "shu-shu" to him "like he was he was dealing with a dog." (Compl. at 5.)[3] In his affidavit, the plaintiff states that his colostomy ruptured during the night on April 23rd and on April 24th, when he told defendant Fuertes-Rosario that he was bleeding, she told him he must go through his counselor first. (Compl. at 4-5; Pl.'s Aff. at 5.) Further, he alleges that instead of providing him medical treatment, she forced him to tuck his shirt inside his pants and leave. (*Id*.) He alleges that when the Assistant Warden saw the rupture, he ordered one of the lieutenants to escort him to the medical facility. (*Id.*) On April 26, 2007, the plaintiff was seen by Dr. Blocker who noted a "small scabbed area" and noted no bleeding. (Pl.'s Aff. Opp. Defs.'Mot. to Dismiss at 6.) Dr. Blocker requested a surgery consultation. (*Id*.)

The plaintiff was seen for a surgery consultation on May 16, 2007, and transported to the Aiken Medical Center on June 8, 2007, where he underwent "scans for further surgery." (Pl.'s Aff. Opp. Defs.' Mot. to Dismiss at 4.) Further, the record shows that the plaintiff underwent hernia surgery on October 31, 2007. (*Id*. Ex. 5 at 32-33.)

On May 16, 2007, he states defendant Barron refused to give him medications prescribed to him, Ibuprofen and Benadryl, and told him he could purchase these medications at the commissary. (Compl. at 9.) He alleges that the commissary did not have or sell these medications. (*Id.*)

---

[3]The undersigned notes that in his affidavit, the plaintiff alleges he sought medical care from defendant Saha on April 20th for "pain-burn symptoms in [his] abdomen with strong headaches." (Pl.'s Aff. Opp. Defs.' Mot. to Dismiss at 5.) He states he began bleeding during the night of April 23rd and he contends he was denied medical treatment by Saha before the "rupture occurred." (*Id.*)

3

The plaintiff states he has tried to exhaust his administrative remedies but that his grievances were rejected for retaliatory reasons. (Compl at 2.) . He seeks $5,000,000.00 in monetary damages from each defendant or $10,000,000.00 collectively, for medical negligence. (Compl. at 11.)

## APPLICABLE LAW

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993). A pro se complaint must be read liberally, and such persons are not held to the strict pleading requirements otherwise required of attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976). When, however, it appears to the Court that the plaintiff has totally failed to state a claim which would entitle him to relief, a defendant is entitled to have his motion to dismiss granted. Fed.R.Civ.P. 12(b)(6).

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is

4

deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**Exhaustion**

The defendants contend that the plaintiff has failed to exhaust his administrative remedies. The undersigned agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court." *Woodford*, 126 S.Ct. at 2385 (*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

Furthermore, exhaustion is a prerequisite to suit that must be completed *prior* to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005)(emphasis added). *Cabbagestalk v. Ozmint*, 2007 WL 2822927 (D.S.C. 2007). *See also Neal v. Goord,* 267 F.3d 116, 123 (2nd Cir. 2001)(holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)(holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir.1999) (holding "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

The Administrative Remedy Program of the BOP, codified in 28 C.F.R. § 542.10(a), sets out a four-step process of exhaustion required for federal inmates to commence an action in the United States District Court. First, the inmate must attempt to informally resolve the complaint with a staff member. 28 C.F.R. § 542.13(a). If informal resolution is

not successful, the inmate must file a formal written complaint to the Warden. This complaint must be filed within twenty (20) days from the date on which the basis for the complaint occurred. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, that response must be appealed to the Regional Director within twenty (20) calendar days from the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). Only after the completion of all four of these steps is an inmate allowed to file an action in the United States District Court.

After reviewing the filings in this case, it appears that the earliest grievance filed at FCI-Edgefield relating to the claims raised in this action was filed April 19, 2007. (Compl. Ex. 7 at 5.) On April 24, 2007, the staff member, Dr. Rex Blocker, responded that the plaintiff would be placed on medical call to discuss the situation. (*Id*.) Further, on June 12, 2007, the Warden responded to a grievance dated June 8, 2007, relating to these claims. (Compl. Ex. 9 at 5-6.) However, it does not appear that the plaintiff appealed any of these responses prior to filing this action on June 21, 2007.

In fact, it is undisputed that the plaintiff failed to complete all four steps regarding the claims he is raising in this action. The plaintiff, however, alleges a futility argument. He contends that he filed several grievances, but the defendants would not respond to them or they were rejected. (Compl. at 2.) The plaintiff states that on June 12, 2007, he filed a BP-9 because he had not received any response to his earlier grievance. (Compl. Ex. 2

8

at 14.) He states he received a response on June 20, 2007. (*Id*.)  The plaintiff has not alleged he made any effort to obtain further review prior to filing this action. *See Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (holding exhaustion required even though plaintiff claimed futility). *See also Thornton v. Snyder*, 428 F.3d 690, 693 (7th Cir. 2005) (holding an inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement). Further, the record does show that some of the plaintiff's grievances were returned unprocessed. However, when the plaintiff's grievances were rejected, it was because the plaintiff had failed to follow the proper procedure and each time he was informed what needed to be done. (*See, e.g.*, Dkt. Entry #12 - Pl.'s Mot. to Re-open Case Ex. 13.)

Further, a review of SENTRY indicates the plaintiff submitted a Request for Administrative Remedy on June 21, 2007, to the Southeast Regional Office ("SERO"), requesting surgery for his abdominal hernia. (Defs.' Mem. Supp. Mot. to Dismiss Attach. A). On June 21, 2007, the request was rejected by the SERO with a notation that the plaintiff should have submitted the remedy to the Warden at the institution and informed him to request assistance from his unit team to file such remedy. (*Id*.) Then, on July 20, 2007, the plaintiff submitted a Request for Administrative Remedy to the Warden raising multiple medical issues. (*Id*. Attach. B). On July 20, 2007, the request was rejected because the plaintiff did not submit his administrative remedy through his counselor. (*Id*.) The remedy was also rejected because the plaintiff submitted two different BP-8 forms about medical issues arising from two different BOP institutions. (*Id*.) Accordingly, based

on the evidence in the record, the plaintiff did not exhaust all of his administrative remedies *prior* to filing this action.  Therefore, it is recommended that this action be dismissed.

Alternatively, the undersigned recommends this action be dismissed for failing to state a claim.[4]  The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended.  *Id.* at 104.

"Deliberate indifference" is a very high standard.  In *Miltier,* the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment."  896 F.2d at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee*

---

[4] 29 U.S.C. § 1915(e)(2) imposes on the district courts a duty to screen initial filings. Specifically, it requires a district court to dismiss a complaint filed in forma pauperis "*'at any time* if the court determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.' § 1915(e)(2)(B)(i)-(ii)." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006)(emphasis added).

*v. Murphy*, 797 F.2d 179 (4th Cir.1986).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

In this case, the undisputed evidence reflects that the plaintiff has been seen and treated on multiple occasions by medical personnel at FCI-Edgefield.  Further, approximately six weeks after arriving at FCI-Edgefield, he had a surgery consultation on May 16, 2007, and he underwent "scans for further surgery" at the Aiken Medical Center on June 8, 2007.  (Pl.'s Aff. Opp. Defs.' Mot. to Dismiss at 4.)  Further, the record shows that the plaintiff underwent hernia surgery on October 31, 2007.  (*Id*. Ex. 5 at 32-33.)  At most, there was a delay in treating the plaintiff.  "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994).  As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. at 1037.  The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss.  The plaintiff speculates as to what injuries might have occurred, such as the  development of an infection.  Such

11

speculation, however, falls short of supporting a claim of a serious injury. *See Moseley v. King*, 2006 WL 2827555 (D.S.C. 2006). Accordingly, the defendants' motion to dismiss should be granted.

**State Law Claims**

To the extent that the plaintiff's complaint states additional claims under state law, (i.e. medical malpractice or negligence), the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' motion to dismiss or, alternatively, for summary judgment (Dkt. # 20) be GRANTED; and the Plaintiff's claims be DISMISSED.

IT IS SO RECOMMENDED.

S/Bruce Howe Hendricks
United States Magistrate Judge

April 7, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).